UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| NICHOLAS LABER,<br><br>Plaintiff,<br><br>vs.<br><br>MARTIN O'MALLEY, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | 5:23-CV-05078-DW<br><br><br>ORDER REVERSING COMMISSIONER'S DECISION AND REMANDING FOR RECONSIDERATION |

On November 8, 2023, Nicholas Laber filed a complaint appealing the final decision of Kilolo Kijakazi,[1] the acting Commissioner of the Social Security Administration ["SSA"], denying disability insurance benefits. (Doc. 1). Defendant denies claimant is entitled to benefits. (Doc. 11).

## FACTS AND PROCEDURAL HISTORY[2]

On August 24, 2017, Laber applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act, respectively, alleging disability beginning September 22, 2016. (AR 212-225).[3] 42 U.S.C. §§ 401, et seq., 1381, et seq. The SSA denied the claim after four levels of administrative review, including initial determination (AR 147-

---

[1] Martin O'Malley became the Commissioner of SSA on December 20, 2023. Pursuant to Fed. R. Civ. P. 25(d), O'Malley is automatically substituted as the defendant in all pending social security cases. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).
[2] Laber's activities, capacities, and medical and occupational history are further outlined in Laber v. Saul, 5:20-cv-05051-KES, Doc. 25.
[3] The court will cite to information in the administrative record as "AR at p. ___."

151), reconsideration determination (AR 155-167), Administrative Law Judge ("ALJ") hearing decision (AR 9-28), and Appeals Council denial of review (AR 1-5). Laber filed a civil action in this court on August 24, 2020. AR 760-764; see Laber v. Saul, 5:20-cv-05051-KES. Laber filed a subsequent DIB and SSI application on November 20, 2020. Id. at 833. The SSA denied the second claim at the initial and reconsideration levels. Id. at 836-843; 846-853. Laber then requested a hearing before an ALJ. Id. at 988-989.

On March 25, 2022, this court remanded ALJ Olson's decision, finding that he improperly rejected treating psychiatrist Dr. Lord's opinions regarding Laber's psychological condition. Laber, 5:20-cv-05051, Doc. 25. This court found that Dr. Lord opined that Laber had either marked or extreme limitations related to his ability to understand, remember, and carry out instructions, interact appropriately with supervisors, co-workers, and the public as well as respond to changes in a routine work setting. Id. at 9. This court reversed the ALJ's finding that Dr. Lord's opinions were "unpersuasive" because they were not supported by "objective medical evidence", and they were inconsistent with Laber's activities of daily living. Id. at 11. The court reversed and remanded the case, concluding that "given the objective medical evidence contained in the Medical Source Statement, the treatment notes, and Dr. Lord's letter, the court finds that the record does not provide substantial evidence for the ALJ's finding that Dr. Lord's opinion lacked supportability." Id. at 15.

On July 19, 2022, the Appeals Council, based on the Federal Court's decision, remanded Laber's case to an ALJ and ordered the ALJ to consolidate Laber's claims and issue a new decision on both claims. Id. at 833.

On May 2, 2023, an evidentiary telephone hearing was held before ALJ Tanya Dvarishkis. Id. at 725-759. At the hearing, Laber, his mother, and vocational expert Cassie Mills testified. Id. On August 23, 2023, the ALJ issued a decision finding that Laber was not disabled. Id. at 761-805. In the decision, the ALJ rejected Dr. Lord's opinions, finding his opinions were not supported by his Mental Status Examinations and were inconsistent with Laber's activities. Laber exhausted his administrative remedies, and the ALJ's decision is the final decision of the Commissioner subject to judicial review. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001). "Substantial evidence is 'less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009) (quoting Maresh v. Barnhart, 438 F.3d 897, 898 (8th Cir. 2006)).

The court's review is more than a search of the record for evidence supporting the Commissioner's "findings and requires a scrutinizing analysis, not merely a rubber stamp of" approval. Scott ex rel. Scott v. Astrue, 529 F.3d

818, 821 (8th Cir. 2008); see Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)) (The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision[.] [The court must also] take into account whatever in the record fairly detracts from that decision."). It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 901 (8th Cir. 2005).

The court also reviews the Commissioner's decision to determine if an error of law was committed; error of laws include procedural errors, the use of an erroneous legal standard, or an incorrect application of the law. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act. See Smith, 982 F.2d at 311.

## DISCUSSION

Social Security law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416, 423(d)(1)(A); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his previous work, or any

other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

The SSA established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits under Title XVI. 20 CFR § 416.920(a). If the ALJ determines a claimant is not disabled at any step of the process, the evaluation ends as the ALJ found that the claimant is not disabled. Id. The five-step sequential evaluation process evaluates whether the claimant:

> (1) is presently engaged in a "substantial gainful activity"; (2) has a severe impairment - one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) has the residual functional capacity to perform . . . past relevant work; and (5) can perform the past work, if the claimant cannot, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998) (quotation modified).

Here, the ALJ applied the five-step test and determined that Laber was not disabled. (AR 700-716). At Step One, the ALJ determined Laber worked after his alleged disability onset date, but the work was not substantial gainful activity. Id. at 703. At Step Two, the ALJ found that Laber has the following severe impairments and severe medically determinable mental impairments: history of pituitary tumor, hypothyroidism, anxiety, depression, and mood disorder. Id. at 703-704. At Step Three, the ALJ determined that Laber does not have an impairment or combination of impairments that meets the criteria of one of the Listings in 20 CFR Part 404, Subpart P, Appendix 1. Id. at 708-

5

711. In evaluating step four, the ALJ resolved that despite Laber's impairments he had the RFC to perform light work[4], stating Laber:

> can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. He can stand or walk six hours total in an eight-hour workday. He can sit six hours total in an eight-hour workday. The claimant can tolerate occasional exposure to extreme cold, weather, and workplace hazards. He must avoid all exposure to extreme heat. The claimant can understand, remember, and carry out simple instructions in a job requiring not more than simple work-related decisions and occasional changes in the routine work setting. He can tolerate occasional interactions with supervisors, coworkers, and members of the public. He is precluded from performing work requiring a specific production rate or specific hourly quotas (e.g., as seen on an assembly line).

Id. at 707-708. At step five, the ALJ held that Laber is unable to perform any past relevant work, holding "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." Id. at 714-715. The ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity there are jobs that exist in significant numbers in the national economy that the claimant can perform." Id. at 715. The ALJ concluded "claimant has not

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 CFR § 404.1567(b).

been under a disability, as defined in the Social Security Act, from September 22, 2016, through the date of this decision[.]" Id. at 716.

Laber brings two issues on appeal: 1) whether the ALJ erred by rejecting Dr. Lord's opinions regarding Laber's condition; and 2) whether this case should be reversed and remanded to the Commissioner for the purpose of calculating and awarding benefits. (Doc. 8, p. 1). The Commissioner "respectfully submits that [the ALJ's] final decision finding Plaintiff not disabled within the meaning of the Act is supported by substantial evidence and free of legal error." (Doc. 11, p. 18).

**A. The ALJ's Consideration of Dr. Lord's Opinion**

Because Laber applied for disability after March 27, 2017, the ALJ's consideration of medical opinions is governed by 20 C.F.R. § 404.1520c. The new regulations eliminated the long-standing "treating physician" rule. See Kuikka v. Berryhill, 2018 WL 1342482, at *9 n.3 (D. Minn. Oct. 17, 2019) ("On March 27, 2017, the SSA rescinded the Treating Physician Rule with respect to social security disability appeals filed after the date of publication."). Under the new regulations, an ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

The regulations still recognize the "foundational nature" of the observations of treating sources. Sidney D. W. v. Kijakazi, 2023 WL 2646984, * 6 (D.S.D Mar. 27, 2023) (quoting Barrett v. Berryhill, 906 F.3d 340, 343 (5th

Cir. 2018)). The regulations suggest that treating source opinions will often be given greater weight because "the examining relationship provides them with a better understanding of an applicant's condition." Berryhill, 906 F.3d at 343 (citing 20 C.F.R. § 404.1520c(c)(3)(v) ("A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.")).

Under the new regulations, the ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." Bowers v. Kijakazi, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). The first two factors, supportability and consistency, are the most important. Id. (citing 20 C.F.R. § 404.1520c(a)); see Andrew H. S. v. Kijakazi, 2022 WL 409954, at *9 (D. Minn. Jan. 24, 2022) ("The two most important factors are supportability and consistency, which the ALJ must address explicitly.").

The SSA has described supportability and consistency as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

8

20 C.F.R. § 416.920c(c)(1)-(2). The new requirements are meant to "provide individuals with a better understanding of [the Commissioner's] determinations and decisions" and "provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (Jan. 18, 2017).

The ALJ found Dr. Lord's opinions from October 2019, April 2020, and May 2023 to be "unpersuasive." (Doc. 5-1, p. 14).

**1. Dr. Lord's October 2019 Opinion**

On October 3, 2019, Dr. Lord completed a Medical Source Statement of Ability to do Work Related Activities (Mental). (AR 694-696). Dr. Lord opined Laber had marked restrictions on his ability to understand and remember, carry out, and make judgments on simple work-related instructions/decisions; he also opined that Laber had extreme limitations in his ability to perform complex tasks in the workplace. Id. at 694. Dr. Lord stated Laber's "memory, concentration, focus problems related to his severe mood disorder and his endocrine dysfunction (e.g. pituitary insufficiency syndrome). Both adolescent onset. Mood disorder severe with rage reactions, angry outbursts, mood swings, irritability, poor social/work judgment, insomnia, agitation, high reactivity to stressors, etc." Id. In addition, Dr. Lord opined that Laber had marked restrictions in his ability to respond appropriately to changes in a routine work setting and interact appropriately with the public, supervisors, and co-workers. Id. at 695. Dr. Lord stated Laber lost "numerous jobs due to interpersonal problems and assuming 'they would understand' and they didn't.

Poor communication skills, avoidance, severe anxiety, 'panic' days, missing work, etc." Id.

The ALJ found Dr. Lord's opinion that Laber had marked to extreme limitations in his ability to understand, remember, apply information, and interact with others to be unpersuasive for four reasons. (Doc. 5-1, p. 14). First, the ALJ stated "Dr. Lord heavily relied on the claimant's subjective mental health symptoms as well as his own abnormal mental status examination findings while the claimant was undergoing various situational stressors mainly involving his significant others and his son's behavioral issues to support his opinion (Exhibit 14F[;] see Exhibits 16F-17F)." Id. Second, the ALJ stated "Dr. Lord's opinion is not entirely consistent with some his normal mental status examinations in findings during the period at issue." Id. Third, the ALJ opined "Dr. Lord's opinion is inconsistent with the claimant's statements to Dr. Lord regarding his activities of daily living including engaging work activity, having a significant other, caring for his son, and drive a motor vehicle, as noted above (Exhibits 2F, 7F, 16F-17F & 22F-23F)." Id. Lastly the ALJ stated "Dr. Lord's opinion is inconsistent with the opinion of Dr. Strand, who found the claimant to have moderate limitations in these areas of mental function." Id.

Although the ALJ no longer defers or gives any specific evidentiary weight, including controlling weight, to any medical opinion(s), the regulations still recognize the "foundational nature" of the observations of treating sources. Sidney D. W., 2023 WL 2646984, * 6. The regulations suggest that treating

10

source opinions will often be given greater weight because their relationship with the Claimant provides a better understanding of the individual's condition. 20 C.F.R. § 404.1520c(c)(3)(v). Therefore, the fact that Dr. Strand reviewed Laber's psychological records, at the request of the Social Security Administration, and disagreed with Dr. Lord's opinion does not automatically deem Dr. Lord's opinion incorrect. The ALJ must explain how Dr. Strand's opinion is inconsistent with Dr. Lord's opinion. Further, the ALJ failed to explain how Dr. Lord's statement is inconsistent with some his normal mental status examinations. The ALJ must explain how these statements undermine Dr. Lord's opinion. See John B.H. v. Saul, No. 4:20-CV-004080-VLD, 2021 WL 1192930, , at *27 (D.S.D. Mar. 30, 2021) (remanding in part because ALJ failed to specify how claimant's acknowledged activities were inconsistent with doctor's opinion); Flatqual v. Saul, 2019 WL 4857584, at *25 (D.S.D. Oct. 2, 2019) (ALJ improperly discounted medical opinion because ALJ failed to explain how doctor's finding of "normal strength and neurological readings" undermined doctor's opinion about claimant's sitting and standing functionality); Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) ("[D]oing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to [his] work-related functional capacity."). The ALJ failed to explain how Dr. Lord's opinions about Laber's mental functioning is discredited.

Regarding Laber's activities of daily living, Laber's medical notes are replete with observations from Dr. Lord that directly support his conclusions

11

about Laber's limitations in the specified areas of work-related mental functioning. For example, in the notes from Laber's last visit before the alleged onset period, Dr. Lord noted Laber "appears to be moving away from the job he has had," that he "has been more suspicious lately and even at times accusatory of those around him," and that he "remain[s] reactive, sensitive, and labile to environmental stress." (Doc. 5, p. 699). Notes from Laber's first visit during the alleged disability period, and his first after quitting his job at Knecht, include that Laber "continues to struggle and has significant problems with concentration, focus[,] and memory," in addition to him "bit[ing] off more than he can chew," and at times being "grandiose . . . arrogant, irritable[,] and . . . extremely distrustful." Id. at 441-42. These observations of Laber's focus and concentration limitations and his high reactivity to environmental stressors appear in notes from nearly every visit and are much more relevant for evaluating the specific opinions given by Dr. Lord in his Medical Source Statement. Although the ALJ acknowledges these other observations, he provides no reasoning for privileging one set of findings over the other. See Lutz v. Kijakazi, 2022 WL 782300, at *5 (E.D. Mo. Mar. 15, 2022) (agreeing with claimant "that the absence of any explanation of why the ALJ disregarded [doctor's] limitation to one-to-two step tasks, when she accepted all of the other limitations in [the doctor's] opinion, requires remand").

Given the objective medical evidence contained in the Medical Source Statement, the treatment notes, and Dr. Lord's letter (AR 36-38), the court

finds that the record does not provide substantial evidence for the ALJ's finding that Dr. Lord's opinion lacked supportability or consistency.

**2. Dr. Lord's April 2020 Opinion**

On April 5, 2020, Dr. Lord wrote a letter providing additional objective medical evidence to support his opinion regarding Laber's mental functioning limitations contained in the Medical Source Statement. (AR 36-38). Dr. Lord wrote that Laber has "high reactivity to environmental stressors" and "a long history of oppositional defiant issues that can be called 'authority problems.'" Id. at 37. He noted when Laber is "under distress, he often becomes avoidant or can 180 degrees from that and [be verbally] aggressive and threatening," and that "[h]is social anxiety is extremely high and he often will avoid going to work because of conflicts with people he works with." Id. In this letter Dr. Lord also provided more context and explanation for the times during which it appears Laber's functioning is improved. He explained that Laber "can present reasonably well initially with kind of a passive thin veneer of having it together and within a short time or longer period of time he decompensates." Id. Dr. Lord situated Laber's employment at Knecht in this context, explaining that when Laber is "in a situation day in and day out and becomes more familiar with it, he can regress." Id. This happened during his employment at Knecht, where over time his mental functioning deteriorated to the point where he could not maintain that job, and he has continued to deteriorate since then, with his "mood variability, angry outbursts, and avoidance" causing him to lose the jobs he has attempted since leaving Knecht. Id. at 37. Dr. Lord wrote "at

13

times he can present reasonably stable when he's not under duress. But if he's in a situation day in and day out and becomes more familiar with it, he can regress. He has under duress in the office been crying, sobbing, having panic attacks, and on the verge of hospitalization." Id. at 38.

The ALJ found Dr. Lord's opinion that Laber had marked limitations in his ability to understand, remember, apply information, and interact with others to be unpersuasive, namely because: "Dr. Lord opinion is not supported by some of his normal mental status examination findings and the claimant's own statements to Dr. Lord involving the claimant's activities of daily living prior to October 2021, as noted above" and his "opinion is inconsistent with the normal mental status examination findings, the claimant's activities of daily living, and the prior administrative findings by Dr. Strand, who found the claimant to have only moderate limitations in these areas of mental function." (Doc. 5-1, p. 14).

As stated previously, Laber's medical notes are replete with observations from Dr. Lord that directly support his conclusions about Laber's activities of daily living and Laber's mental status. Further, as discussed *supra*, although the ALJ no longer defers or gives any specific evidentiary weight, including controlling weight, to any medical opinion(s), the regulations still recognize the "foundational nature" of the observations of treating sources. Sidney D. W., 2023 WL 2646984, * 6. A treating source opinions will often be given greater weight because their relationship with the Claimant provides a better understanding of the individual's condition; therefore, the fact that Dr. Strand

14

found Laber to have only moderate limitations in these areas of mental function does not automatically deem Dr. Lords opinion incorrect. As discussed *supra*, the ALJ must explain how Dr. Strand's opinion is inconsistent with Dr. Lord's opinion. Thus, the court finds that the record does not provide substantial evidence for the ALJ's finding that Dr. Lord's opinion lacked supportability or consistency.

### 3. Dr. Lord's May 2023 Opinion

On May 28, 2023, Dr. Lord wrote a letter addressing the question of whether the psychological limitations given on his 2019 Medical Source Statement were consistent or whether they had changed. (AR 1353-54). Dr. Lord reviewed Laber's criminal docket sheet, Pennington County Jail records, and psychiatric notes from the Federal Bureau of Prisons; Dr. Lord wrote it was his "opinion that given this information his work restrictions remain the same." Dr. Lord explained that Laber's mood disorder was variable in the past and presented with "a thin veneer of having it together and over a period of time decompensates or rapidly decompensates when under duress." Id. at 1353. Dr. Lord wrote that the 2019 Medical Source Statement opinions would be unchanged as Laber's "symptoms are chronic, ongoing and unremitting." Id. at 1354. Dr. Lord wrote "he will continue to have difficulties with severe insomnia, comorbid anxiety, mood swings, and high reactivity to environmental stressors." Id. Dr. Lord concluded that "the records from incarceration, both here and elsewhere, are consistent with his mood disorder and see little or no change in his chronic condition. If anything, it might be a little bit worse

15

without the Abilify or other additional mood stabilizers that would help his condition." Id.

The ALJ responded to Dr. Lord's letter stating:

> The undersigned deems the opinion issued in May 2023 by Dr. Lord concerning the claimant having the "same work restrictions" based on the claimant's prison medical records. Dr. Lord did not specify what work restrictions were placed upon the claimant and did not cite to any of the prison medical records to support his opinion (Exhibit 25F). The undersigned notes the medical record is devoid of mental status examinations conducted by Dr. Lord after October 2021 to support his limitations in May 2023 or reasonably relate his opinion from April 2020 forward to May 2023 (Exhibits 1F-28F). Additionally, Dr. Lord's opinion is inconsistent with the claimant's reported activities to Dr. Lord through October 2021, as summarized above. The undersigned notes if the "same work restrictions" are the marked to extreme limitations in the claimant's ability to understand, remember, apply information, and interact with others, this opinion is still unpersuasive for the reasons noted above as well as the reasons for finding the May 2023 opinion unpersuasive. Furthermore, the undersigned finds the portion of Dr. Lord's opinion regarding the claimant being "dysfunctional," unpersuasive because the issue as to whether a claimant can function in the work setting is a question reserved for the Commissioner of the Social Security Administration. Additionally, this portion of Dr. Lord's opinion is vague and conclusory without providing specific function-by-function limitations that would render the claimant "dysfunctional."

(Doc. 5-1, p. 15).

As discussed *supra*, the court finds that the ALJ failed to provide substantial evidence for the ALJ's finding that Dr. Lord's opinion lacked supportability or consistency in regard to Laber's reported activities. Additionally, the ALJ opinion that the medical record is devoid of mental status examinations conducted by Dr. Lord after October 2021 to support his limitations in May 2023 or reasonably relate his opinion from April 2020 forward to May 2023 fails to show how Dr. Lord's opinion lacked supportability

16

or consistency. Because the record does not provide substantial evidence for the ALJ's finding that Dr. Lord's opinion lacked supportability or consistency, the court must determine which type of remand is appropriate.

**IV. Type of Remand**

Laber requests that the court reverse the ALJ's decision and remand for a calculation of benefits. Docket 1 at 48. Because of the court's "abundant deference to the ALJ," a remand with instructions to award benefits is only appropriate where "the record overwhelming supports such a finding." Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000) (quoting Cox v. Apfel, 160 F.3d 1203, 1210 (8th Cir. 1998)). Otherwise, the court should remand for further administrative findings. Id.

Laber relies on numerous cases to argue that remanding with instructions to award benefits is appropriate here. Docket 8 at 48 (citing Cumella v. Cubin, 936 F. Supp. 2d 1120 (D.S.D. 2013); Melissa F.E. v. Kijakazi, 20-cv-5075-JLV (Doc 29), 2022 WL 1265920; Glenn O. v. Kijakazi, 20-cv-5073-JLV (Doc. 29), 2022 WL 2952986; Bryan C. v. Saul, 20-cv-5007-JLV (Doc. 21), 2021 WL 9682055; Erstad v. Colvin, Civ. 14-5052-JLV (Doc. 20), 2015 WL 5707126; Jeffrey v. Secretary of Health & Human Services, 849 F.2d 1129, 1133 (Eighth Circuit 1988); Beeler v. Bowen, 833 F.2d 124, 127, 128 (8th Cir. 1987); Cline v. Sullivan, 939 F.2d 560, 569 (8th Cir. 1991)). In Cumella, the vocational expert testified that if the claimant had the limitations reported by one of his doctors, then the claimant could not perform any jobs. 936 F. Supp. 2d at 1140. Likewise, the vocational expert at Laber's hearing

testified that an individual with the marked limitations noted by Dr. Laber in the Medical Source Statement would not be competitively employable. (Doc. 5, pp. 757-758). But Cumella was governed by the previous regulations for considering medical opinions, where the opinions of treating providers generally had controlling weight. Thus, once the court found that the doctor's opinion was controlling, there was nothing left to resolve. See Cumella, 936 F. Supp. 2d at 1140. That is not the case here, where the court has determined only that the ALJ did not properly evaluate or explain the supportability and consistency of Dr. Lord's opinion. See John B.H., 2021 WL 1192930, at *38 (reversing and remanding for further administrative proceedings "because the record evidence should be clarified and properly evaluated").

## CONCLUSION

Because the ALJ did not properly evaluate or explain the supportability and consistency of Dr. Lord's opinion, it is

ORDERED that the Commissioner's decision is reversed and remanded for reconsideration in accordance with this order.

DATED this 10th day of July, 2024.

BY THE COURT:

_/s/ Daneta Wollmann_
DANETA WOLLMANN
United States Magistrate Judge